```
            UNITED STATES DISTRICT COURT
                     FOR THE
               DISTRICT OF VERMONT
```

United States of America            :
                                    :
        v.                          :    File No. 2:00-CR-49
                                    :
Franklin Zwiers,                    :
        Defendant.                  :

### MAGISTRATE JUDGE'S REPORT & RECOMMENDATION
(Papers 19 and 20)

In June 2000, Defendant Franklin Zwiers ("Zwiers") was charged in a three-count indictment on two counts of conspiring to import and distribute methylenedioxy-methamphetamine, also known as MDMA or ecstasy.  The conspiracy is alleged to have occurred between July and October 1999.  The third count of the indictment seeks the forfeiture of currency seized from him on October 31, 1999.

Zwiers has filed a motion for a bill of particulars and a motion to suppress all statements made by him to government agents on October 31, 1999 when he was departing for Belgium from Newark International Airport.  On July 5, 2005, Chief Judge Sessions referred the motion for a report and recommendation.  An evidentiary hearing was held on September 9, 2005.  For the reasons set forth below, I

recommend that the Court DENY Zwiers' motions.

## BACKGROUND

In September 1999, Immigration and Customs Enforcement ("ICE") Special Agent Tom Pugliese was assigned to investigate a scheme to import ecstasy hidden inside cosmetics jars into the United States. The government's investigation led to the identification of Zwiers, a citizen of the Netherlands. Specifically, Agent Pugliese was aware that $117,000 had been delivered to Zwiers at a Boston hotel in late September 1999 by an alleged co-conspirator. Agent Pugliese was subsequently notified that Zwiers had entered the United States on October 28, 1999 at JFK International Airport. A customs examination at that time discovered no contraband or large sums of money. Zwiers was scheduled to leave for Belgium from Newark International Airport on October 31, 1999.

On October 31, 1999, Agent Pugliese identified Zwiers by having him paged to the Sabena Airlines ticket counter at the departure gate. At approximately 4:20 p.m., uniformed Customs Inspector Chris Granto, ICE Agent Sean Quick and Pugliese stopped Zwiers on the jet way as he was boarding the flight and asked him if he was leaving the U.S. with

more than $10,000 in cash or monetary instruments.  Zwiers responded that he was carrying approximately $58,500.  He claimed to be unaware that he was supposed to report the money.  They brought Zwiers to the Customs Inspection Office, located in a different terminal, for a secondary inspection.  Zwiers was told that he would miss his flight and that arrangements would be made for him to be on another flight.

During the secondary inspection at the Customs Inspection Office, the agents searched Zwiers bag, reviewed documents found in the bag, counted the money and arranged for Zwiers to fly to Belgium later that evening from JFK International Airport.  Zwiers was not questioned about the money during the secondary inspection.  They informed him that they wished to conduct an interview but that he was not under arrest and was free to go.  Zwiers agreed to be interviewed.  At 5:52 p.m., the agents advised him of his <u>Miranda</u> rights and he signed a waiver of those rights.

Agents Pugliese and Quick proceeded to interview Zwiers for approximately one hour.  This interview took place in the Customs Investigation Office located one floor below the Inspection office.  The agents photographed Zwiers, but did

not fingerprint him.  At no time was he physically restrained.  After the interview, Zwiers was given an airline ticket and transported to JFK International Airport for return to Belgium.

## DISCUSSION

I.  Motion to Suppress

Zwiers has filed a motion to suppress any statements he made to government agents at Newark International Airport on October 31, 1999, claiming that he was in custody and did not receive the requisite Miranda warnings.  The government argues that the statements by Zwiers that it plans to use should not be suppressed because they were made either during (1) the primary customs inspection, or (2) the interview after Zwiers waived his Miranda rights.

The Fifth Amendment protects an individual from being compelled to incriminate himself.  U.S. Const. amend. V. Because of the inherent pressures that exist in a custodial setting, this privilege against self-incrimination requires officers to give Miranda warnings to an individual who is subject to a custodial interrogation.  Miranda v. Arizona, 384 U.S. 436, 478 (1966); United States v. Moody, 649 F.2d 124, 127 (2d Cir. 1981).

4

Custody is defined as "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Thompson v. Keohane, 516 U.S. 99, 112 (1995). Determining whether there is custody is an objective inquiry, United States v. Mitchell, 966 F.2d 92, 98 (2d Cir. 1992), based on the totality of the circumstances. Thompson, 516 U.S. at 112 n.11; see also Tankleff v. Senkowski, 135 F.3d 235, 243 (2d Cir. 1998).

It is well settled that the necessary detention and questioning that occurs at the border is not custodial, despite the fact that the individual is not free to leave. United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985); United States v. Gupta, 183 F.3d 615, 618 (7th Cir. 1999); United States v. Ventura, 85 F.3d 708, 712 (1st Cir. 1996); United States v. Silva, 715 F.2d 43, 46-47 (2d Cir. 1983). In fact, "events which might be enough to signal 'custody' away from the border will not be enough to establish 'custody' in the context of entry into the country." United States v. Galloway, 316 F.3d 624, 629 (6th Cir. 2003)(quoting United States v. Moya, 74 F.3d 1117, 1120 (11th Cir. 1996)). This rule holds true for routine customs inspections of individuals both entering and leaving the

country.  United States v. Ezeiruaku, 936 F.2d 136, 143 (3rd Cir. 1991) (exporting unreported currency); United States v. Berisha, 925 F.2d 791, 795 (5th Cir. 1991) (same); United States v. Hernandez-Salazar, 813 F.2d 1126, 1138 (11th Cir. 1987) (same); United States v. Udofot, 711 F.2d 831, 839 (8th Cir. 1983) (exporting firearms and ammunition); United States v. Swarovski, 592 F.2d 131, 133 (2d Cir. 1979) (exporting military aircraft gunsight camera); United States v. Stanley, 545 F.2d 661, 667 (9th Cir. 1976) (importing marijuana).

In this case, Zwiers has not presented any evidence that the conversation on the jet way was anything other than a routine primary inspection.  Zwiers was asked whether he was carrying over $10,000 in cash.  He replied that he was and admitted that he had unknowingly failed to report it.  Miranda warnings are not required for such a routine customs inspection.  See Silva, 715 F.2d at 46-47; Galloway, 316 F.3d at 631.  Therefore, any statements made by Zwiers during that conversation need not be suppressed.

The government contends that it "does not plan to offer any statements made by Zwiers" during the secondary inspection.  (Government's Supplemental Response to Motion

to Suppress, Page 1-2).  However, should this plan change, it is worth noting that the secondary inspection of Zwiers also did not require Miranda warnings.  Galloway, 316 F.3d at 630-31; United States v. Pratt, 645 F.2d 89, 90-91 (1st Cir. 1981).

First, a secondary customs inspection is not *per se* custodial.  Pratt, 645 F.2d at 91; see also Galloway, 316 F.3d at 632 (finding that "the nature of the secondary customs inspection is uncoercive and non-custodial, and remains such unless and until probable cause exists"); Chavez-Martinez v. United States, 407 F.2d 535, 539 (9th Cir. 1969)(finding the existence of probable cause as the determining factor as to when Miranda rights are needed at a secondary customs inspection).  In this case the agents had information that a month earlier a person who was involved in smuggling ecstasy had reported delivering a large sum of money to Zwiers in Boston.  This information along with Zwiers' statement that he was unaware of the reporting requirement was not sufficient to constitute probable cause.  In fact, Pugligese testified that he did not have probable cause to arrest Zwiers.

Second, Zwiers has not presented any evidence that the

7

secondary inspection was not routine.  The agents never used handcuffs or any other show of force on Zwiers.  Zwiers was told that they were making arrangements for him to be on another flight that evening.  The agents searched Zwiers bags, evaluated documents found therein and counted the money Zwiers was carrying.  Although Zwiers volunteered information, the agents did not question Zwiers about the source of the money during this time.  They asked only routine administrative questions such as name and date of birth.  While the inspection lasted approximately 90 minutes, the duration of the inspection alone is not enough to undermine an otherwise reasonable and efficient inspection.  <u>United States v. Tehrani</u>, 826 F. Supp. 789, 802 (D. Vt. 1993) <u>aff'd</u>, 49 F.3d 54 (2d Cir. 1995).  It is not unreasonable to spend 90 minutes arranging a flight to Belgium, especially at 5:00 p.m. with no flights available out of Newark Airport, and counting $59,890 by hand.  Accordingly, Zwiers' secondary inspection was routine and non-custodial and did not require <u>Miranda</u> warnings.

   Subsequent to this secondary inspection, Agents Pugliese and Quick told Zwiers that they wanted to interview him, but that he was not under arrest and was free to go.

Zwiers opted to answer their questions. Therefore, the agents warned Zwiers of his <u>Miranda</u> rights and Zwiers signed a waiver of those rights. Zwiers has neither suggested nor presented any evidence that he did not knowingly and voluntarily waive his rights. Moreover, the hearing testimony demonstrated that Zwiers appeared to understand his <u>Miranda</u> rights and never expressed an inability to understand English.

   I recommend that the Court deny Zwiers' motion to suppress his statements.

II. <u>Motion for a Bill of Particulars</u>

   Zwiers is also seeking a bill of particulars specifying (1) the date and location of every importation and distribution in which he was allegedly involved, and (2) the name and current address of each witness to the acts in which he was involved. Zwiers argues that a bill of particulars is necessary to provide him with notice of his alleged criminal activity so that he can prepare a defense and avoid surprise at trial. The government responds that a bill of particulars is not necessary because Zwiers has sufficient access to the information by way of the hundreds of disclosed documents, the witness list, the extradition

affidavit, and plea colloquies and sentencing transcripts from the cases of co-conspirators who are expected to testify at trial.

Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, a defendant may request the court to direct the government to provide a bill of particulars.  Fed. R. Crim. P. 7(f).  It is within the court's discretion to decide whether a bill of particulars is necessary to defend against the charges, avoid surprise at trial and protect the defendant's right against double jeopardy.  <u>United States v. Bortnovsky</u>, 820 F.2d 572, 574 (2d Cir. 1987).  However, since a bill of particulars binds the government's case to the information so provided, <u>United States v. Glaze</u>, 313 F.2d 757, 759 (2d Cir. 1963), the court should consider the effect disclosure will have on the government's ability to present its case.  <u>Id.</u>

"The function of a bill of particulars is to provide defendant with information about the details of the charge against him" and/or the underlying conduct.  <u>United States v. Torres</u>, 901 F.2d 205, 234 (2d Cir. 1990) (citation omitted); <u>Bortnovsky</u>, 820 F.2d at 574.  A bill of particulars is not to be used simply to gain access to the

10

government's theory of the case or its evidence.  Torres, 901 F.2d at 234; United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998).  Therefore, if the defendant seeks information that "is provided in the indictment or in some acceptable form, no bill of particulars is required." Bortnovsky, 820 F.2d at 575; Barnes, 158 F.3d at 665-66.

On its face, the indictment alleges a conspiracy to import and distribute ecstasy between July and October 1999. It does not include any details of the conspiracy.  The government, however, has disclosed a significant amount of material, as noted earlier.  In fact, Zwiers argues that it is this abundance of disclosure that serves to "de-particularize" the charge because it is not clear what information applies to him.  However, "[a]s a general rule, the defendant does not 'need' detailed evidence about the conspiracy in order to prepare for trial properly."  United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2d Cir. 1989).  The Court is satisfied that the government has disclosed sufficient information to notify him of the nature of the charges against him. Additionally, at the hearing the government agreed to provide further disclosure of evidence to permit Zwiers to

focus his efforts, specifically the nature of the testimony of a number of its witnesses including whether they were simply custodians of record. Therefore, a bill of particulars is not required. I recommend that the Court deny Zwiers' motion for a bill of particulars.

## CONCLUSION

For the foregoing reasons, I recommend that the Court DENY Zwiers' motion to suppress and motion for a bill of particulars. (Papers 19 and 20).

Dated at Burlington, in the District of Vermont, this day 15th of August, 2005.

/s/ Jerome J. Niedermeier

Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify portions of the proposed findings, recommendations or report objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).